STATE ex rel. v. STOCKTON et al.—270 S. W. (2d) 586.

Eastern Section.   April 20, 1954.

Petition for Certiorari denied by Supreme Court, July 22, 1954.

Ward R. Case, Jr., of Jamestown, for appellant.

Reagan, Neal & Craven, of Jamestown, Williams, Harwell, Howser & Thomas, of Nashville, for defendants in error.

McAMIS, P. J.  This is a suit to recover in behalf of the State of Tennessee and Fentress County an alleged shortage of funds in the office of defendant George L. Stockton, Clerk and Master of the Chancery Court of Fentress County. The period covered is from October 1, 1940, when the defendant George L. Stockton was appointed to succeed Maud C. Stockton, to December 4, 1944. The case was

transferred, along with the companion case of State ex rel. v. Maud C. Stockton to the Chancery Court of Scott County where a decree was rendered for the complainant. Defendants have appealed and a separate opinion is being filed in each case.

After a reference, the Chancellor in this case fixed the net shortage at $2,461.24 for which amount, plus interest at 6% and a penalty of 12½%, a decree was rendered. The sureties were held liable for a penalty of 10% under Code Section 1835.

■ We deal first with the insistence that the Chancellor erred in holding admissible in evidence a purported copy of the official report of State Auditors Sensing and Powell. Under the proof and the controlling authorities we think the Chancellor's ruling was correct.

Mr. Sensing, the senior auditor, testified that, assisted by State Auditor Powell, he made an official audit of the Clerk and Master's office for the period in question, completing it in March, 1945; that he was in charge of the audit and made the report, a copy of which was made an exhibit to the bill and to his testimony; that the examination of the office was based upon the books and records in the office and bank accounts which were checked against the records of other State and County offices with which the Clerk and Master had dealt; that the report correctly reflects the "condition of the financial affairs" of the office. Mr. Powell's deposition was taken by complainant but was suppressed on defendants' motion because of an error in the certificate of transmission. Mr. Sensing testified, however, that Mr. Powell's work was merely to assist in checking details and doing other work specifically assigned to him.

Mr. Sensing further testified that when the work was

completed separate copies of the report were furnished to the defendant, George L. Stockton, to the Governor, the County Trustee and the County Judge, and another copy retained in the Auditor's office. It is not disputed that the report identified by the witness and admitted by the Chancellor is one of these, presumably the one furnished the County Judge who filed the bill. While there is no direct proof that it is a carbon copy, it appears to be and Mr. Sensing who made the report testified that it is a true and correct copy and, as stated, that it correctly reflects the financial condition of the office.

State v. Standard Oil Co., 120 Tenn. 86, 110 S. W. 565, is authority for the rule that where a number of copies of a document are made simultaneously all are duplicate originals. A clear text statement of the rule is:

"The rule which excludes evidence of copies of documents where the documents themselves are available as proof does not apply to documents and writings which are executed in duplicate or multiplicate form. It is well settled that where a writing is executed in duplicate or multiplicate form, each of the parts is the writing which is to be proved, because, by the act of the parties, each is made as much the legal act as the other. Each part of a document so executed is regarded as the primary evidence of its contents, and the original need not be produced. Thus, the different impressions of a writing produced by placing carbon paper between sheets of paper and writing upon the exposed surface are, according to the prevailing view, duplicate originals and may be introduced in evidence without accounting for the nonproduction of the original * * *." 20 Am. Jur. 380, Evidence 427.

We cannot agree that the report should be ex-

cluded under the authority of State ex rel. Stewart v. Follis, 140 Tenn. 513, 205 S. W. 444, 446, because the work was partially done by Mr. Powell. As shown, he worked under the direct supervision of the senior auditor whose responsibility it was to make a correct audit. In State ex rel. Stewart v. Follis, the work was divided among five or six auditors only three of whom testified. As stated in the opinion, each was given a ''distinct part of the general task'' and the Court was unable to say what part of the work was done by each. For that reason the holding in that case is not controlling here. For applicable rule see Evans v. Boggs, 35 Tenn. App. 354, 245 S. W. (2d) 641.

If we are in error, however, in sustaining the Chancellor's ruling as to the admissibility of the report, there is other evidence of the shortage and the amount due. Mr. Sensing testified, independently of the copy of the report, that there was a shortage in the amount of $3,031.24 (later reduced by $570.00, the amount of a disputed item); that the Clerk and Master was present the greater part of the time while the audit was in progress, expressed satisfaction with the treatment he had received and, after going over the items of the report, admitted its correctness. There is no adequate denial of this testimony in the record. Since the evidence does not preponderate against the Chancellor's finding it is immaterial whether there is a concurrent finding of the Master and the Chancellor as to the existence of a shortage and the amount owing. Defendants offered no convincing evidence that the auditors' finding of a deficit was incorrect and when the case was re-referred to the Master they did not insist that the hearing as to items chargeable to the Clerk and Master be reopened before the Master.

In support of the insistence that the Chancellor

erred in not requiring complainants to surcharge and falsify the account, defendants cite and rely upon State ex rel. Stewart v. Follis, supra. The rule there enunciated is that where the bill is for a general accounting and the defendant sets forth a stated account the complainant is required to amend the bill to surcharge and falsify. We agree with the Chancellor that complainants sufficiently complied with the rule by setting out in the bill the various reports made by the defendant Stockton and undertaking to show errors and omissions therein. In any event, we do not think defendants bring themselves within the rule by making general references in their answer to the settlements made "from time to time" without undertaking to show the result or to put complainants upon notice of their duty to surcharge and falsify.

It is next insisted that the Chancellor erred in not holding defendants entitled to a credit of $2,642.71 which, it is claimed, was paid to the Trustee of Fentress County after December 4, 1944, the end of the audit period. In support of this insistence, defendants rely upon the report of the Clerk and Master to the January, 1945, term of the County Court reciting the payment of that amount to the Trustee and upon the following receipt at the foot of the report:

"Jan. 1, 1945 Rec'd from Geo. L. Stockton $2642.71.

Sam M. Smith, Trustee"

Although, according to the purported receipt, this was three months before the audit report was completed and nine months before the bill was filed, as shown, defendant Stockton admitted the correctness of the report without such credit. The answer contains no claim of payment although a copy of the auditor's report showing the period covered and the amount due was filed as an exhibit to the bill. In addition, as pointed out in the reply brief, the copy

of the report of January 1, 1945, filed with the bill does not contain a receipt of payment by the Trustee. Under all the circumstances, we are unable to find that there is no material evidence to sustain the concurrent finding of the Master and the Chancellor disallowing this payment as a credit for the period here in question.

It is next insisted that the Chancellor erred in allowing interest at 6% from the end of the audit period, December 4, 1944, rather than from April 4, 1953, the date of the final decree, and in assessing a penalty of 12½%.

As to the allowance of interest, it has been repeatedly held that the allowance of interest on a claim not falling within the provisions of Code Section 7305 is a matter as to which the Court must exercise its discretion. Southern Const. Co. v. Halliburton, 149 Tenn. 319, 258 S. W. 409; Phoenix Ins. Co. v. Jordan, 28 Tenn. App. 11, 184 S. W. (2d) 721; Evans v. Boggs, 35 Tenn. App. 354, 245 S. W. (2d) 641 and cases cited in the opinions. In view of the showing that demand for payment was made, we can find no basis for holding that the Chancellor abused his discretion in allowing interest.

The cases of State, for Use of Obion County v. Cobb, 184 Tenn. 675, 202 S. W. (2d) 819; and State v. Miner, 176 Tenn. 158, 138 S. W. (2d) 766, relied upon by defendants, are not considered apposite because in each of them there was a bona fide dispute as to certain items claimed by the officials and the Court merely held that the Chancellor had not abused his discretion in not allowing interest and penalty. Here, the Chancellor found no extenuating circumstances but, on the contrary, that the official had converted funds of the office by intermingling personal and official funds in his individual bank account and allowed both interest and penalty. We cannot say that this was error.

In the Cobb case, which was also a suit against a Clerk and Master, although apparently assuming that in a proper case the penalty should be imposed, the Supreme Court agreed with the Chancellor in refusing to allow it. Code Section 9532 expressly authorizes judgment upon motion against Clerks, after failure to pay upon demand, for the amount due "with interest, and twelve and one-half per cent. damages." The fact that complainant has instituted suit rather than proceed upon motion does not affect the allowance of the statutory penalty. Cf. Rader v. Davis, 73 Tenn. 536 and see also Hartford Accident & Indemnity Co. v. Farmers Nat. Bank, 24 Tenn. App. 699, 149 S. W. (2d) 473, affirming without discussion of the question here raised the allowance of interest and penalty.

The final insistence is that the Chancellor erred in imposing a penalty of 10% per annum against the sureties on the bond of the Clerk and Master, resulting in a decree for $174.40 in excess of the amount of the decree against the principal. The penalty was imposed under Code Section 1835 providing:

"Sureties on the bonds of public officials shall be liable for the principal sum in default and covered by said bond and for interest thereon at the rate of ten per cent. per annum for the period of delinquency, and not otherwise."

State v. Miner, 176 Tenn. 158, 138 S. W. (2d) 766, supra, involved liability for a penalty similarly imposed under Code Section 1635 upon the sureties of county Trustees. The court adopted the rule of strict construction applicable to penalty statutes and held that the penalty would not accrue until the controversy between the trustee and the county had been settled. Although the statutes here involved contain no provision for demand, as in Section 1635, we think the reasoning of State v. Miner applies. A

complicated accounting was necessary to determine the amount of the shortage. As in the Miner case, supra, there had been no formal settlement with the County showing a deficit. We do not think a surety should be placed under the duress of such a penalty and forced to choose between incurring it and paying a disputed amount. As held in State ex rel. Stewart v. Follis, supra, 140 Tenn. at page 531, 205 S. W. 444, the sureties on official bonds are entitled to rely on settlement reports made by the principals with the proper county authorities until overturned.

The decree will be modified to eliminate the 10% penalty against the sureties and otherwise affirmed. Costs will be taxed to appellants.